**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| CHERI EVERHART, )<br>)<br>  Plaintiff, )<br>vs. )     1:06-cv-1634-SEB-JMS<br>)<br>MICHAEL J. ASTRUE, Commissioner )<br> of the Social Security Administration, )<br>)<br>  Defendant.¹ ) | |

**ENTRY DISCUSSING COMPLAINT FOR JUDICIAL REVIEW**

Cheri Everhart ("Everhart") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. BACKGROUND**

Everhart applied for DIB on September 12, 2002, alleging an onset date of November 9, 2000. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on December 7, 2005. Everhart was present, accompanied by her attorney. Medical and other records were introduced into evidence. Everhart, two medical experts and a vocational expert testified. The ALJ denied Everhart's application on March 16, 2006. On September 8, 2006, the Appeals Council denied Everhart's request for review of the ALJ's decision, making the ALJ's decision final. *See Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d) of the *Federal Rules of Civil Procedure*, Michael J. Astrue, in his official capacity only, is the proper defendant in this action.

The ALJ's decision included the following findings: (1) Everhart met the disability insured status requirements of the Act on November 9, 2000, and had not engaged in substantial gainful activity since that date; (2) Everhart had medically-determinable "severe" impairments of congenital absence of the right hand, left shoulder rotator cuff pathology, degenerative disc disease of the cervical spine, recurrent left carpal tunnel syndrome, a depressive disorder, an anxiety-related disorder, and drug and alcohol abuse; (3) Everhart's impairments, singly or in combination, did not meet or medically equal any one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4; (4) Everhart's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the decision; (5) Everhart had the residual functional capacity ("RFC") for light work that is simple and repetitive in nature with occasional lifting/carrying 20 pounds; frequent lifting/carrying 10 pounds; no lifting above shoulder level; occasional pushing/pulling with the left hand; no climbing of ladders, scaffolds, and ropes; no crawling; no repetitive use of the left hand; and avoiding even moderate exposure to heights, moving machinery, and vibrations; (6) Everhart was capable of performing her past relevant work as a janitor; (7) in the alternative, Everhart was a younger individual with more than a high school education and a semi-skilled work background, but she acquired no transferable skills; (8) although Everhart's exertional limitations did not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there were a significant number of jobs in the national economy that she could perform, including light unskilled work as it exists in the State of Indiana, 2,018 mail clerks, DOT #209.687-026; 1,975 inventory clerks, DOT #222.587-050, and 617 crossing guards, DOT #371.567-010; and (9) a finding of "not disabled" is, therefore, appropriate within the framework of Medical-Vocational Rule 202.021 and the testimony of the vocational expert. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Everhart was not under a "disability," as defined in the Act, at any time through the date of the ALJ's decision.

## II. DISCUSSION

### A. Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P,

>Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ found that Everhart had severe impairments consisting of congenital absence of the right hand, left shoulder rotator cuff pathology, degenerative disc disease of the cervical spine, recurrent left carpal tunnel syndrome, a depressive disorder, an anxiety-related disorder, and drug and alcohol abuse, but she was capable of performing her past relevant work as a janitor, or in the alternative, there were a significant number of light unskilled jobs in the national economy that she could perform. Everhart argues that the ALJ committed three legal errors in rendering her decision.

First, Everhart contends that the ALJ erred in failing to document a specific finding as to the degree of limitation in each of the mental functional areas in the regulations. She argues that the ALJ did not specifically rate the degree of limitation for the four areas of activities of daily living, social functioning, episodes of decompensation, and concentration, persistence or pace.

The ALJ discussed Everhart's diagnoses of depressive disorder and anxiety-related disorder.  (R. at 29). The ALJ noted that a state agency reviewing psychologist opined that Everhart's dysthymia and anxiety-related disorder were not severe because they resulted in no more than mild functional limitations. *Id.*  The ALJ noted that a second state agency psychologist opined that Everhart had an affective disorder and there was a question of polysubstance abuse, and that she had a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. *Id.* The ALJ further discussed the fact that the psychological medical expert testified that in his opinion Everhart had no more than moderate functional limitations. *Id.* The ALJ expressly accepted these opinions to the extent that they showed that Everhart's mental impairments did not meet Listings 12.04B and 12.06B. *Id.* The ALJ also reviewed the report of a consultative psychological examiner and the report of a therapist. (R. at 23-24, 31). The ALJ further discussed a state agency psychologist's report indicating that Everhart was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and she was moderately limited in her ability to maintain socially appropriate

3

behavior. (R. at 32). The psychologist opined that Everhart's only limitations appeared to be in dealing with her family and reported problems with criticism. (R. at 32, 373). The ALJ stated that she agreed with this assessment to the extent it was consistent with her RFC assessment. No medical source indicated that Everhart was markedly or extremely limited in any functional area. The ALJ indicated, by discussing the psychological reports of record, in what areas Everhart may have been moderately limited. There is no evidence of any episodes of decompensation, and the psychological expert testified after having reviewed the record that none of Everhart's functional limitations were more than moderate. (R. at 121). The ALJ adequately discussed the mental impairment evidence and indicate how she evaluated that evidence. Substantial evidence supports the ALJ's evaluation of Everhart's mental impairments.

The second error asserted is that the ALJ failed to consider Everhart's physical and mental impairments in combination in determining her RFC. Everhart does not specify in what manner her psychiatric impairments were not considered in combination with her physical impairments, nor does she point to any evidence showing that her mental impairments made any physical impairments more serious in terms of her ability to function. The ALJ, in fact, did discuss at length the record of evidence and the opinions of testifying psychological and internal medicine experts. (R. at 20-33). The ALJ stated that in making her RFC assessment, she considered "all symptoms" and "all of the record at this point" in concluding that there was "no supporting evidence of anything more than mild carpal tunnel syndrome, situational stress, and drug-seeking behavior, none of which would preclude [Everhart] from performing work activity." (R. at 29, 30). Everhart found that Everhart's psychological impairments were of a mild nature in all but two (which were "moderate") of 21 categories. (R. at 32, 371-372). She noted that the psychological expert opined that Everhart could perform simple, repetitive work. (R. at 32). In sum, the ALJ adequately discussed the evidence of Everhart's physical and mental impairments in combination and substantial evidence supports her conclusions in that regard.

The third error asserted is that the ALJ committed legal error by failing to ask the vocational expert whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), as required by SSR 00-4p. The Commissioner concedes that the ALJ did not fulfill her duty to ask the vocational expert whether his testimony was inconsistent in any way with the DOT, but argues that this was harmless error because no conflict has been identified. The Commissioner also points out that the ALJ did ask the vocational expert to classify Everhart's past work according to the DOT. (R. at 125). The vocational expert also testified that he was "going out of the realm now of the DOT just so you're aware of it," when he discussed Everhart's ability to perform substitute teaching jobs. (R. at 127). The vocational expert further testified that "according to the DOT" a person limited to simple repetitive tasks could not perform substitute teaching. (R. at 130). On further questioning by counsel, the vocational expert again stated that "it was my own opinion, it was outside of the DOT," when he testified about the substitute teaching position. (R. at 132). The vocational expert also identified by DOT the number of jobs that he opined Everhart could perform. (R. at 129-130).

Everhart responds that pursuant to *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006), it is not her place to have to identify any conflicts between the vocational testimony

4

and the DOT. The distinction between this case and *Prochaska*, however, is that in *Prochaska* the parties disagreed as to whether there were specific inconsistencies between the vocational expert testimony and the requirements listed in the DOT. *Id.* at 736. The court could not, in the first instance, resolve the question as to the identified potential inconsistencies. *Id.* Therefore, the court remanded the case to the ALJ. Here, not only did the whole of the vocational expert's testimony indicate that he *was*, in fact, testifying in a manner consistent with the DOT, but he notified the ALJ when he was testifying in an instance that was *not consistent* with the DOT. (R. at 124-132). In addition, no potential inconsistencies have been identified. For these reasons, the ALJ's failure to ask the vocational expert if his testimony conflicted with information found in the DOT was at most harmless error.

The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."). In determining Everhart's eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Everhart's age, education, and work history; (2) Everhart's history of diagnoses, treatment, medications, and evaluations; (3) Everhart's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Everhart, two medical experts and a vocational expert.

The ALJ explained her rationale for evaluating the opinions and evidence of record. There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. Substantial evidence supports the ALJ's findings of fact and identification and assessment of Everhart's impairments, and there was no reversible error of law in the manner in which the evidence was evaluated.  As is the case here, an "ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). Here the ALJ sufficiently articulated her assessment of the evidence to enable the court to "trace the path of [her] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)). Substantial evidence supports the ALJ's finding that Everhart was not disabled as defined in the Act at any time through the date of the ALJ's decision.

### III. CONCLUSION

There was no reversible error in the assessment of Everhart's application for DIB. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Everhart is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 11/27/2007

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana